UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| VS. | ) | SA-10-CR-794-XR |
| | ) | |
| RAYMOND RODRIGUEZ, | ) | |
| | ) | |

**ORDER**

On this date, the Court considered the Defendant's motion for reconsideration (dkt. no. 57) of the order denying his motion to suppress.

**Background**

On August 31, 2010, Steve Wilkins, a Texas Department of Public Safety officer signed an affidavit in support of a search warrant. Agent Wilkins sought a warrant to search a residence located at 318 Amberdale Oak, San Antonio, Texas. Agent Wilkins alleged that probable cause existed to believe that Raymond Rodriguez lived at the residence and that he was in possession of cocaine at the residence.

Agent Wilkins stated that during an unrelated investigation a cooperating defendant (CD) gave information to another DPS agent (David Trevino) that Raymond Rodriguez was a supplier of cocaine in the San Antonio area. The CD also relayed that he had seen cocaine at Rodriguez's previous residence and that he had previously purchased two ounces of cocaine from Rodriguez. The affidavit gave no indication as to when CD had seen cocaine at Rodriguez's previous residence, when CD purchased the cocaine, when this information was relayed by the CD to Agent Trevino, nor when Agent Trevino relayed this information to Agent Wilkins.

Agent Wilkins stated in his affidavit in support of search warrant that on August 27, 2010 he located Rodriguez to now be living at 318 Amberdale Oak.[1]

On August 31, 2010, Agent Wilkins conducted a "trash run" at the residence. He saw a trash can had been placed in front of the residence against the curb.[2] Agent Wilkins had previously confirmed that Tuesday was a trash pickup day for the residence. He retrieved two trash bags from the trash can.

The trash bags were taken to the High Intensity Drug Trafficking Area office. During the search of the trash bags "several clear plastic sandwich style baggies containing a white powdery residue" were found in one of the trash bags. Agent Wilkins stated in his affidavit that some "of the baggies had the corners cut out which is consistent with packaging Cocaine for sell. This is also consistent with the amount the CD stated the CD had previously purchased from suspected party.... Affiant knows through his training and experiences in law enforcement that baggies such as these are often used to package illegal controlled substances such as Cocaine."

In the same trash bag as the "baggies" was a Sprint cellular bill addressed to Rodriguez. Agent Wilkins stated this information in his Affidavit. One[3] of the baggies was field tested for cocaine. The residue tested positive. Agent Wilkins stated this information in his Affidavit.

---

[1] "Affiant confirmed this through surveillance of suspected place and a utilities check indicated that electric service at suspected place is in the name of suspected party." Agent Wilkins also stated that he observed a blue 2004 Mitsubishi Galant at the residence and that a registration check indicated that the vehicle was registered to Rodriguez.

[2] Agent Wilkins stated in his affidavit that it "was apparent the trash can was placed in the street for garbage pickup, as there were other trash cans on suspected place street that were also in the road for pickup." A common sense reading of the affidavit is that no trash can was seen on August 27, but a trash can was placed there between August 27 and August 31.

[3] Defendant argues that because the other baggies were not field tested, the presence of the other baggies cannot support probable cause.

Based on the above, Agent Wilkins stated in his affidavit that he believed that Rodriguez was in possession of cocaine at the residence and the residence contained a quantity of cocaine intended for distribution.

The search warrant was signed by a Bexar County Magistrate on August 31, and a search of the residence took place on the same day. Over $9,000 in cash was located, along with cocaine, a 9 mm Taurus handgun and two cellular phones.

**Defendant's motion to suppress and motion to reconsider**

Defendant challenges the search warrant arguing: (1) the "source's information is bare bones"; (2) alternatively, it is stale; (3) there "is no established nexus between the trash and the residence"; (4) anyone could have discarded their empty baggies of cocaine into the trash can on the curb in front of that residence; (5) there "is no evidence that drug trafficking occurred at the residence"; (6) the "affiant's opinion that baggies with cocaine residue, with corners cut out are consistent with packaging cocaine for sale" is conclusory and not credible; and (7) "evidence of past, undated simple possession of cocaine does not support probable cause to believe that cocaine and other contraband will be found at the residence at the time of the search" and accordingly the warrant was stale.

The Government, relying upon various cases[4], responds that the discovery of the cocaine residue in the baggies provided probable cause for the search. Further, it argues that

---

[4] *U.S. v. Briscoe*, 317 F.3d 906, 908-909 (8th Cir. 2003), *U.S. v. Vahlick*, 606 F. 2d 99, 100 (5th Cir. 1979) (warrantless search of trash can not prohibited), *U.S. v. Sauls*, 192 Fed. Appx. 298, 299-300 (5th Cir. 2006) and *U.S. v. Deckard*, 117 Fed. Appx. 350, 351 (5th Cir. 2004)("officers personally examined abandoned trash placed at the curb of Deckard's residence and discovered materials used in the packaging of narcotics. In addition, a field test for cocaine residue proved positive, and the police had discovered correspondence, bills, and a prescription bottle in the names of Deckard and his girlfriend, thereby linking the trash to Deckard.").

mail addressed to the Defendant, the observation of a vehicle registered to the Defendant and the utilities check provide the nexus to the residence. Finally, the Government alternatively argues that the *Leon* good faith exception is applicable.

**Analysis**

With regard to the background information discussing the cooperating defendant, the Government does not seriously dispute that this information, standing alone, was insufficient to establish probable cause, as the affidavit contained no information corroborating the CD's veracity, reliability, or the time frame of his knowledge. *U.S. v. Sauls*, 192 Fed. Appx. 298, 299 (5th Cir. 2006). As the Court did during the March 23, 2011 hearing, the Court will excise those portions of the affidavit from its analysis.

The question in this case is the same question posed in *Briscoe*, namely whether the drug residue in the garbage was sufficient stand-alone evidence to establish probable cause. Under these facts, the Court concludes there was probable cause to issue the warrant.

Agent Wilkins suspected Rodriguez to be residing at the residence based on the utility check and the vehicle registration check. Agent Wilkins saw the residence on or about August 27. On August 31, Agent Wilkins saw a trash can in front of the residence at the curb. He previously confirmed that Tuesdays were a trash pick up day for that residence. Inside one of the trash bags were "baggies" and a Sprint cellular bill addressed to the Defendant.

Facts in the affidavit must establish a nexus between the house to be searched and the evidence sought. *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir.1982). The nexus

may be established through direct observation or through "normal inferences as to where the articles sought would be located." *Id.* Although Defendant complains that no one observed him placing the trash can at the curb, such direct observation is not required to establish probable cause. Probable cause "is that which warrants a man of reasonable caution in believing that there is a 'practical, non-technical' probability that contraband is present on the premises to be searched; it does not demand a showing that the belief is more likely true than false." *U.S. v. Adcock*, 756 F.2d 346, 347 (5th Cir. 1985).

With regard to Defendant's implied argument that the baggies may have been evidence of "simple possession of cocaine," but does not support probable cause to believe that trafficking was taking place at the residence, in paragraph 3 of the affidavit, Agent Wilkins stated it "is the belief of affiant that said suspected party has possession of and is concealing at said suspected place ... cocaine." The affidavit in support of search warrant established probable cause to suspect that cocaine was being kept at the residence.[5]

In the alternative, assuming *arguendo* that the affidavit was insufficient to establish probable cause, the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984) applies in this case. "[E]vidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Id.* at 922–23. Where a warrant is supported by

---

[5] "[N]ot only does the presence of discarded marijuana stems and seeds reasonably suggest that ongoing marijuana consumption or trafficking is occurring within the premises, but the simple possession of marijuana seeds is itself a crime under both federal and state law." *Briscoe*, 317 F.3d at 908.

5

more than a bare bones affidavit, an officer may rely in good faith on the warrant's validity. The Court finds that the affidavit was not a bare bones affidavit. Also, the Court finds that the affidavit was not totally lacking in indicia of probable cause. None of the four exceptions to the *Leon* test are applicable here. Accordingly, the agents executing the warrant had a good-faith reliance on the warrant's validity.

## Conclusion

Defendant's motion for reconsideration (dkt. no. 57) is denied.

It is so ORDERED.

SIGNED this 19th day of March, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE